1  ANDRÉ BIROTTE JR.
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   GWENDOLYN M. GAMBLE (CA Bar No. 143267)
4  Assistant United States Attorney

5       Room 7516, Federal Building
        300 North Los Angeles Street
6       Los Angeles, California 90012
        Email: gwen.gamble@usdoj.gov
7       Telephone:  (213) 894-6684
        Fax:        (213) 894-7819
8
   Attorneys for Defendant
9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

14  ADRIENNE P. CLAYTON,        )     No. CV 09-6479 R (VBKx)
                                )
15       Plaintiff,             )     **STATEMENT   OF   UNCONTROVERTED**
                                )
16       v.                     )     **FACTS AND CONCLUSIONS OF LAW**
                                )
17  JOHN E. POTTER,             )
                                )
18                              )     **Hearing Date:  June 2, 2010**
         Defendant.             )
19  _____ )     **Time:          10:00 a.m.**

20

21                                    Honorable Manuel L. Real

22

23       Defendant's Motion for Summary Judgment having come on for

24  hearing, and the Court having considered the pleadings, evidence

25  presented, and memorandum of points and authorities, the Court makes

26  the following Findings of Fact and Conclusions of Law:

27

28                              **I.**

1

**FINDINGS OF FACT**

2      1.   On approximately November 7, 2006 a vacancy announcement was

3 issued for the position of Supervisor, Postal Police for Tour 1

4 listing the hours as 9:15 pm to 6:00 a.m.  Evidentiary Appendix -

5 Declaration of Nichole Cooper ("Cooper Decl.") at ¶ 5.[1]  The position

6 involved supervising Tour 1 Postal Police officers engaged in the

7 protection of mail, life, and postal property at postal facilities and

8 surrounding areas and providing backup to officers for non-routine and

9 emergency situations.  <u>Id</u>.

10     2.   In December 2006 a review panel for the Supervisor position

11 was comprised of Assistant Inspector in Charge Nichole Cooper (African

12 American female), Los Angeles Division Postal Police Manager Karen

13 Parks (African American female), and Assistant Inspector in Charge San

14 Diego Field Office  Robert Malaby (Asian Hispanic male).  Cooper Decl.

15 ¶ 6.

16     3.   The panel reviewed applications for the position from four

17 people, including the Successful Applicant (Hispanic female), an

18 unsuccessful applicant (Caucasian male), another unsuccessful

19 applicant ( African American male), and plaintiff Adrienne Clayton

20 (African American female).  Cooper Decl. ¶ 7.  Each of the four

21 applicants submitted a P.S. Form 991 Application and were interviewed

22 by the panel on December 7, 2006.  <u>Id</u>.

23     4.   The panel believed the Successful Applicant was the best

24 choice for the position.  Cooper Decl. ¶ 8; Declaration of Karen Parks

25

_____

26   [1]  Defendant's evidentiary references are contained in a separate
Evidentiary Appendix filed concurrently with defendant's Motion for
27 Summary Judgment.

28

1  ("Parks Decl.") ¶ 7.

2      5.   The vacancy was for a Tour 1 supervisor position and the

3  Successful Applicant was familiar with the Tour 1 postal police

4  officers.   Cooper Decl. ¶ 8; Parks Decl. ¶ 7.   The Successful

5  Applicant had primarily worked on Tour 1 (approximately 9:30 p.m. to

6  6:00 a.m.) during her career as a Postal Police Officer including

7  serving as an Acting Supervisor since 2004.   Cooper Decl. ¶ 8; Parks

8  Decl. ¶ 7.

9      6.   The panel believed that the Successful Applicant had a good

10 rapport and familiarity with the Tour 1 Postal Police Officers.

11 Cooper Decl. ¶ 8; Parks Decl. ¶ 7.   They also believed that the

12 Successful Applicant had good interpersonal skills that would assist

13 her as a Supervisor.   Cooper Decl. ¶ 8; Parks Decl. ¶ 7.

14     7.   The panel also considered the Successful Applicant's

15 familiarity and good working relationship with the Tour 1 Officers to

16 be a benefit because morale had been low due to, among other things,

17 a loss of approximately 25-30 Postal Police Officer positions in 2006,

18 the removal of the prior Captain, and other supervisors being out on

19 leave.   Cooper Decl. ¶ 8; Parks Decl. ¶ 7.

20     8.   Plaintiff had primarily worked on Tour 3 (approximately 2:00

21 p.m. to 10:00 p.m.) during her career as a Postal Police Officer.

22 Cooper Decl. ¶ 9; Parks Decl. ¶ 8.

23     9.   After the interviews, the panel's recommendation of the

24 Successful Applicant was conveyed to Inspector in Charge Oscar

25 Villanueva and in December 2006 he selected her for the position.

26 Cooper Decl. ¶ 10.

27     10.  On February 11, 2007, plaintiff was in a motor vehicle

28                                 3

accident while on duty.  Parks Decl. ¶ 12.

11.  A Postal Service employee who suffers job related disabilities is eligible to receive continuation of Postal Service pay ("Continuation of Pay") rather than using sick leave or leave without pay, from the 4th day of the period of the disability up to a maximum of 45 calendar days.  Id.  The USPS Employee and Labor Relations Manual ("ELM") § 545.724, provides that to be eligible to receive Continuation of Pay the employee must, among other things, 1)complete and submit to the Postal Service a Department of Labor Office of Workers Compensation ("DOL OWCP") Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation (Form CA-1), and 2) submit medical evidence from the attending physician within 10 calendar days after filing the claim for Continuation of Pay, showing that a disability resulted from the claimed traumatic injury and indicating when the employee can return to work.  Id.

12.  On approximately March 5, 2007, Postal Police Manager Karen Parks received plaintiff's CA-1 Form through inter-office mail.  Parks Decl. ¶ 14.  When she received the CA-1 Form it had a signature from plaintiff dated February 14, 2007, a signature from Lt. Hawkins dated February 14, 2007, and a witness statement signature from Postal Police Officer Amanda Culbert dated February 23, 2007.  Id.   No medical documentation accompanied the CA-1 Form when she received it.  Id.

13.  After receiving the CA-1 form Manager Parks contacted the Postal Service Injury Compensation Office in Washington, D.C. and determined that the form had not yet been forwarded to them.  Parks Decl. ¶ 15.  Manager Parks forwarded the CA-1 Form to the Injury

4

Compensation office on approximately March 5 or 6th, 2007.  Id.

14.  On approximately March 12, 2007, Manager Parks received medical documentation regarding Ms. Clayton in the form of after care emergency room discharge instructions and forwarded that to Lisa Armstrong at the Postal Service Injury Compensation Office in Washington, D.C.  Parks Decl. ¶ 16.  Based on her discussion with Ms. Armstrong, Parks believed that without proper medical documentation this was insufficient to authorize continuation of pay because the documents were after-care discharge instructions and not an actual diagnosis of the injury.  Id.

15.  On approximately March 22, 2207, plaintiff faxed to Parks and Ms. Armstrong additional medical documentation.  Id.  Thereafter, based on a conversation with Ms. Armstrong, Parks believed that the Postal Service was now authorized to pay plaintiff Continuation of Pay and to do a pay adjustment to change her sick leave to Continuation of Pay for the 4th through 45th day period after the February 11th accident (i.e. the period from February 15th to March 28th 2007). Parks Decl. ¶ 17.

16.  Even prior to the Continuation of Pay being authorized, plaintiff continued to receive pay in February and March 2007 from the Postal Service based on sick leave being used.  Id.

17.  The pay adjustment was done in March 2007 and the sick leave plaintiff had used prior to the authorization to use Continuation of Pay was restored by April 2007.  Id.

18.  After the February 2007 car accident, plaintiff returned to work in approximately April 2008. Declaration of Mahmoud Shooshtari ("Shooshtari Decl.") ¶ 3 Sergeant Shooshtari was one of the

5

1   Supervisors at that time.  _Id_.

2       19.  Plaintiff asked about the location of her badge which is an

3   access card to the facility with an employee's picture on it.  _Id_.

4   Sergeant Shooshtari told plaintiff that he would look into this.  _Id_.

5       20.  Because he did not know where the badge was, he asked

6   Manager Karen Parks about it and said that Ms. Clayton was looking for

7   her badge.  _Id_.  Manager Parks did not know where Ms. Clayton's badge

8   was, but recalled that there was a Postal Service plastic tub that had

9   items such as her uniform, boots, and duty belt.  _Id_.

10      21.  Sergeant Shooshtari thought the badge might be in the tub

11  with her belongings.  _Id_.  He obtained the plastic tub and gave it to

12  Ms. Clayton on April 15, 2008. _Id_.

13      22.  Any statement of Uncontroverted facts erroneously designated

14  as a conclusion of law is incorporated herein.

15                                **II.**

16                        <u>**CONCLUSIONS OF LAW**</u>

17      To withstand summary judgment, the non-moving party must show

18  that there are genuine factual issues that properly can be resolved

19  only by a finder of fact because they may reasonably be resolved in

20  favor of either party.  If the factual context makes the non-moving

21  party's claim <u>implausible</u>, that party must come forward with more

22  persuasive evidence than would otherwise be necessary to show that

23  there is a genuine issue for trial.  <u>Celotex Corp. v. Catrett</u>, 477

24  U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); <u>Anderson v.</u>

25  <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d

26  202 (1986); <u>Matshushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

27  U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); <u>Cal.Arch. Bldg.</u>

28                                  6

1  Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987),

2  cert. denied, 484 U.S. 1006 (1988).

3      The burden of proof in an employment discrimination case is:

4      (1)  plaintiff must carry the initial burden of proof by

5           establishing a prima facie case of discrimination;

6      (2)  If plaintiff successfully establishes a prima facie case,

7           the burden shifts to defendant to articulate a legitimate,

8           nondiscriminatory explanation for the action taken; and

9      (3)  If defendant articulates a legitimate nondiscriminatory

10          explanation[2], the burden shifts back to plaintiff to prove,

11          by a preponderance of the evidence, that the defendant

12          intentionally discriminated against him and accordingly

13          that the explanation articulated by defendant is actually

14          a pretext or ruse for discrimination.  The burden of going

15          forward remains with plaintiff.

16  St. Mary's Honor Center, et al., v. Hicks, 509 U.S. 502, 125 L.Ed.2d

17  407, 417, 113 S.Ct. 2742 (1993); U.S. Postal Service Bd. of Governors

18  v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 75 L.Ed.2d 403

19  (1983); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 67

20  L.ED.2d 207, 101 S.Ct. 1089 (1981); McDonnell Douglas Corp. v. Green,

21  411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973).

22

23      [2]   Should plaintiff succeed in establishing a prima facie case, this creates a presumption of
       unlawful discrimination, and defendant must then articulate a legitimate nondiscriminatory reason for
24     the challenged action.  To carry its burden of production, defendant must "introduce evidence which,
       taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse
25     action."  St. Mary's Honor Center, et al., v. Hicks, 509 U.S. 502, 125 L.Ed.2d 407, 417, 113 S.Ct. 2742
       (1993).  Defendant does not have a burden of proof on this issue, rather defendant merely has the burden
26     of producing such a reason.  Id.  If defendant carries this burden, "the McDonnell Douglas framework --
       with its presumptions and burdens -- is no longer relevant."  Id.; U.S. Postal Service Bd. of Governors
27     v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

28                                           7

Defendant is entitled to judgment because plaintiff cannot establish a prima facie case of disparate treatment based on race. Plaintiff alleges that she was discriminated against based on race (African American) when she was not selected for the Supervisor position in December 2006.  To establish a prima facie case of disparate treatment discrimination plaintiff must show that: 1) he belongs to a protected class, 2) he was performing according to his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly situated persons outside the protected class were treated more favorably.  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002); Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988).

Plaintiff has the burden of establishing a prima facie case of disparate treatment based on race.  However, two of the three review panel members (Nichole Cooper and Karen Parks) were African American. Moreover, the selecting official Oscar Villanueva had previously promoted African Americans when he selected Nichole Cooper (African American, female) for the position of Assistant INC for the Los Angeles Division and Karen Parks (African American, female) for a June 2005 detail as Acting Manager of the Postal Police Security Force, Los Angeles Division.  Declaration of Oscar Villanueva at ¶ 3. Defendant is entitled to summary judgment on the disparate treatment claim.

Defendant is entitled to judgment because plaintiff can not establish a prima facie case of retaliation.  Title VII prohibits retaliation against an employee for opposing a practice prohibited under Title VII or participating in a Title VII investigation, hearing

8

or proceeding.   42 U.S.C. §2000c-3(a).   The prima facie elements of a retaliation case are: 1) plaintiff engaged in protected activity; 2) the agency subjected him to an adverse action; and 3) there was a causal connection between the protected activity and the adverse action.   Villiarimo v. Aloha Island Air, Inc., 281 F.3d at 1064; Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).   To demonstrate a causal connection, plaintiff bears the burden of presenting "evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982); Miller v. Fairchild Industries, Inc., 797 F.2d 727, 731 (9th Cir. 1986).

Plaintiff contends that due to retaliation for protected EEO activity she was not selected for the Supervisor Position, her Continuation of Pay was delayed, and items were returned to her in April 2008.   Plaintiff can not establish a causal connection between the alleged adverse action and protected EEO activity.   Clark County School Dist. V. Breeden, 532 U.S. 268, 273 (2001) (action taken 20 months later does not establish an inference of causation, the temporal proximity must be very close); Villiarimo, 281 F.3d at 1065 (an 18 month lapse does not establish an inference of causation). Moreover, timing alone would not necessarily show causation as there must be evidence that "but for" the protected activity there would have been no adverse action. Villiarimo, supra, 281 F.3d at 1064-1065.

Further, plaintiff can not establish that a delay in processing the Continuation of Pay claim or the return of items constitutes an adverse employment action.   Accordingly, defendant is entitled to summary judgment on the retaliation claim.

9

Plaintiff cannot rebut defendant's legitimate reasons for its actions. Even assuming arguendo that plaintiff could establish a prima facie case of discrimination based on race or retaliation, summary judgment should still be granted in defendant's favor. Defendant has articulated a legitimate non-discriminatory reason regarding its actions. Accordingly, plaintiff can not establish that the articulated reason is pretextual. Villiarimo, 281 F.3d at 1062-1063 (summary judgment affirmed where employee failed to present evidence that employer did not honestly believe its proffered reasons for termination).

Plaintiff has the ultimate burden of persuasion, and must offer specific and significantly probative evidence that defendant's intentional purpose was to take action against him because of his national origin, disability, or in retaliation for protected activity. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2111-2112 (2000) (the ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination); St. Mary's, supra, 125 L.Ed.2d at 422; Aikens, supra, 460 U.S. at 714-15 (the ultimate factual inquiry is whether the defendant intentionally discriminated against plaintiff). Plaintiff must do more than simply make out a prima facie case and attack the credibility of defendant's witnesses. Id.

Plaintiff has no direct evidence, nor any specific substantive circumstantial evidence that defendant's actions were the result of intentional discrimination. Godwin, supra, 150 F.3d at 1222 (where plaintiff relies upon circumstantial evidence to show that an employer's proffered motives were pretext, such evidence must be

10

"specific" and "substantial"' in order to create a triable issue with respect to whether the employer intended to discriminate); <u>Villiarimo</u>, 281 F.3d at 1062.  Since plaintiff cannot meet his ultimate burden of persuasion as a matter of law, defendant is entitled to judgment in its favor.

Any conclusions of law erroneously designated as an Uncontroverted fact is incorporated herein.

DATED: June 7, 2010

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

PRESENTED BY:

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

/s/ Gwendolyn M. Gamble
GWENDOLYN M. GAMBLE
Assistant United States Attorney
Attorneys for Defendant

11